THOMAS NORBURY, ADMINISTRATOR OF THE ESTATE OF BLOOMER HARPER, DECEASED, ET AL. V. MARY M. HARPER ET AL.

FILED NOVEMBER 18, 1903.   No. 13,076.

1. **Review:** MOTION FOR NEW TRIAL. In order to obtain a review by petition in error to this court of errors occurring during the progress of a trial in the district court, a motion for a new trial must be filed and overruled.

2. **Mortgage:** HOMESTEAD. A mortgage executed on a homestead, by one acting under a power of attorney which has been signed only by the husband, is void, as being an attempt to incumber the homestead without the joint signature and acknowledgment of husband and wife to the instrument.

3. **Pleadings:** RULINGS: EXCEPTION. A party is not in a position to complain of a ruling of the trial court, requiring certain defendants to file answers, instanter, as of date when the judgment was rendered, when no exception is taken to such ruling and it is made in response to a motion, filed many months after the rendition of the judgment, asking that such parties be required to answer.

4. **New Trial:** NEWLY DISCOVERED EVIDENCE. A motion for a new trial on the ground of newly discovered evidence is properly overruled, where it appears that the facts offered in support of the motion are only cumulative or relate to matters already established.

5. **Evidence:** SUFFICIENCY. Evidence examined, and *held* sufficient to support the judgment.

ERROR to the district court for Custer county: HOMER M. SULLIVAN, JUDGE. *Affirmed.*

*Robert A. Moore, R. E. Brega* and *J. R. Dean,* for plaintiffs in error.

*Charles Holcomb* and *J. B. Smith, contra.*

KIRKPATRICK, C.

This is a proceeding in error prosecuted from a judgment of the district court for Custer county. It is disclosed by the record that, up to the 6th day of July, 1894, Bloomer Harper, with his wife and children, resided upon a government homestead in Custer county; that, some days prior to that time, he had made final proof, showing compliance with the homestead laws of the United States before the county judge of Custer county, which, in due time, was forwarded to the land office in North Platte. July 5 a final receipt was issued for the land, and on October 23 of the same year a patent was issued. On July 5, 1894, Bloomer Harper with his wife and children left their homestead, apparently with the intention of returning, and removed to Indiana, where they had formerly resided, and where Bloomer Harper, the husband, on February 17, 1896, died. It is further disclosed by the record that, at the time Bloomer Harper made final proof on his homestead, he was indebted to various persons in Custer county, in sums aggregating more than $400. For the purpose of securing these creditors, among whom was the Seven Valleys Bank, plaintiff in error, Harper went to the bank on July 1 and executed to Thomas Norbury, plaintiff in error, a power of attorney, empowering him to pay his debts and, if necessary, to mortgage or sell the farm from which he was about to remove. On July 3, and two days before Harper removed from the homestead, Norbury, assuming to act under the power of attorney mentioned, executed and delivered to the Seven Valleys Bank, of which he was the managing officer, a note in the sum of $323.62, and also a mortgage securing the same upon the land involved in this controversy, both of which he exe-

cuted in the name of Bloomer Harper, by himself as attorney in fact. It is disclosed that, at that time, Harper was indebted to the bank, and that the bank had advanced to others of his creditors something over $200, and this mortgage and note were executed to indemnify it for such advances.

This so-called power of attorney, delivered by Harper to Norbury, was signed by Harper on July 1, 1894. It was not acknowledged, but was sworn to before a notary public, the notary attaching to his certificate a jurat, showing that Harper was duly sworn to the instrument. Some time before November 28, 1894, Norbury became dissatisfied with the so-called power of attorney, and prepared and forwarded to Bloomer Harper, in the state of Indiana, a second power of attorney, which was signed by Bloomer Harper and Mary M. Harper, his wife, and was duly acknowledged before a notary public. This second power of attorney was, in terms, substantially like the first. The record shows that, afterwards, Mrs. Harper executed and caused to be recorded in Custer county a revocation of this power of attorney.

It seems that Norbury took immediate possession of the farm, rented it and collected the rents, and, so far as is disclosed by the record, is still in possession.

It is disclosed that on August 25, 1900, Thomas Norbury filed his petition in the county court of Custer county, asking to be appointed administrator of the estate of Bloomer Harper. Such proceedings were thereafter had that, on October 24, 1900, he was duly appointed administrator and qualified as such, proceeding to administer the estate. Certain claims, in due course, were filed against the estate and allowed by the county court. On February 9, 1900, Norbury, claiming to act under his power of attorney, executed a warranty deed for the premises to one William Tyson, who was also an officer of the Seven Valleys Bank, and on December 1, 1899, it appears that Mary M. Harper executed a quitclaim deed to William A. Mendenhall of all of her interest in the premises, and, thereafter, on De-

cember 19, 1900, Mendenhall reconveyed, by quitclaim deed, to Mary M. Harper. It is disclosed that all of the last three mentioned deeds were wholly without consideration.

On May 28, 1901, Norbury filed in the district court for Custer county, as administrator, a petition for license to sell real estate of Bloomer Harper for the payment of debts against the estate. Due notice of the application was given to Mary M. Harper and her children, by personal service in Indiana. At the time fixed by the court to show cause why the license should not issue, Mary M. Harper appeared, by attorney, and the children, by guardian *ad litem;* and answers were filed, consisting of general denials, and also pleading, that no valid claims had been allowed against the estate; that the land was a government homestead, and that the debts mentioned, if any existed, were contracted prior to the time of making proof, and that, for that reason, the land was not liable for the debts mentioned in the petition. To these answers, the administrator filed replies.

When the cause came on for trial, the Seven Valleys Bank applied for permission to be made a party defendant, and to be allowed to file a cross-petition, setting up its mortgage which Norbury had executed to it, as attorney in fact for Harper. This application was granted, and Tyson, to whom the warranty deed had been executed by Norbury, was also made a party defendant, on his own motion. The bank filed its answer and cross-petition, setting up its mortgage and praying a foreclosure. The widow and children were given permission to file answers, instanter; and the cause was tried to the court, resulting in a finding, generally, in favor of the widow and heirs; denying the petition of the administrator to sell; adjudging that the bank had no valid mortgage on the land in controversy; that the land was a government homestead, and that the debts were contracted before final proof was made; that the land was not liable for the payment of the debts; the deed to Tyson being, by the decree, canceled.

This judgment was entered by the district court for Custer county on June 7, 1902, and, on the 12th day of the same month, Norbury entered into an undertaking superseding this judgment, which was duly approved by the clerk. Subsequently, and on October 8, Norbury and the bank filed a motion, asking permission to open up the judgment and introduced further evidence. On October 11 the bank filed a motion to modify the judgment, and on the same day filed a motion for a new trial, upon many grounds alleged, among which was that of newly discovered evidence. This motion was supported by the affidavits of several persons, setting out the alleged newly discovered evidence, and purporting to show diligence and inability to procure the evidence at an earlier date. These various motions came on for hearing on October 11, and were, each, overruled. The cause is brought to this court by petition in error.

From an examination of the record, it is disclosed that Norbury never filed a motion for a new trial; and, from the evidence in the record, it is quite apparent that the trial court committed no error in refusing to issue a license to sell the real estate in question. It follows that this branch of the case requires no further consideration.

The principal error complained of is, that the trial court should have decreed a foreclosure of the mortgage held by the Seven Valleys Bank. We are unable to find merit in this contention. In the first place, it would seem to be clear that the bank was improperly allowed to intervene in the case upon its own application. Whether the court had jurisdiction to determine the rights of the mortgagee, in this case, may well be doubted; but, as that question is not raised, and all the parties seem to have pleaded to the merits and acquiesced in the trial of the matter, it will be considered upon its merits in this court. It is claimed by the bank that, at the time the trial was actually had in the district court, on June 7, 1902, no answers were on file by the wife or any of the children as against its cross-petition, and that it was, for that reason, entitled to a

default. This contention seems to be without merit. On October 11, following, the bank applied to the district court for an order, requiring the widow and minor children to file answers to its cross-petition. This motion was sustained, and the answers were ordered filed as of date June 7, 1902. No exception by the bank was taken to this action of the trial court, and it is a familiar rule that a party can not predicate error upon a ruling of the court which he was instrumental in procuring.

Again, it is contended that, in any event, the mortgage was a valid and subsisting lien, as shown by the pleadings and evidence, and that the trial court erred in finding that it was invalid and created no lien. This contention also seems to be without foundation. The agreed statement of facts filed in the case, as well as the other evidence, discloses that, at the time the first power of attorney was executed and sworn to, Bloomer Harper, his wife and children were living upon the land, not only as a government homestead, but as a homestead recognized by the laws of this state. It follows, therefore, that even if Bloomer Harper had properly acknowledged this so-called power of attorney, first executed, it would have been absolutely void, as an attempt on his part to convey or incumber the homestead without the signature and acknowledgment of his wife to the instrument. Assuming to act under this power of attorney, the mortgage in suit was executed by Norbury to the bank, of which he was a stockholder, as well as the principal owner and managing officer. The mortgage, so executed, was, beyond question, absolutely void, and the execution of another power of attorney, many months subsequent thereto, could not have the effect of validating the mortgage or make it a lien upon the land.

Again, it may be said that the motion for a new trial does not set up any matters, which may be properly regarded as newly discovered evidence. It contains nothing that was not, apparently, known at the time of the trial, and the evidence suggested seems to be either wholly immaterial or cumulative, or already covered in the stipu-

lation. No valid reason is suggested why this evidence was not offered at the time of the trial. The bank was allowed to intervene in the case, at the time when the case was actually being tried, and, in view of the fact that its rights would have been fully protected without intervention by it at the trial, it is scarcely in a position to complain, many months after the determination of the cause, and after an adverse ruling, that it was not then ready for trial. Upon a view of the entire record, we are satisfied that justice has been done, and that the judgment should be affirmed. It is recommended that the same be done.

DUFFIE, C., concurs.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.